# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

TIMOTHY HOLT, individually and
on behalf of a class,

                    Plaintiff,

     v.

LIVINN SUITES, INC.,

                    Defendant.

Court File No. 10-cv-0383(RHK/RLE)

**PLAINTIFF'S RESPONSE BRIEF
IN OPPOSITION TO
DEFENDANT'S RULE 12(b)(6)
MOTION TO DISMISS**

Plaintiff, Timothy Holt ("Plaintiff"), submits this response in opposition to Defendant, LivInn Suites, Inc.'s ("Defendant") Motion to Dismiss (Doc. 10).

## INTRODUCTION

Plaintiff alleges that Defendant violated the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), 15 U.S.C. § 1681c(g), by providing Plaintiff and other consumers with electronically-generated credit card receipts by e-mail that included the expiration date of their credit cards. Class Action Complaint ("Complaint") at ¶¶ 18, 20. FACTA protects consumers from identity theft. Pub. L. No. 108-159, 117 Stat. 1952 (2003) ("An Act to amend the Fair Credit Reporting Act, to prevent identity theft."). FACTA does this, in part, by prohibiting businesses from including particular credit card information on receipts, and expressly prohibits the inclusion of credit/debit card expiration dates on receipts. 15 U.S.C. § 1681c(g). FACTA was intended to preempt state laws and create a uniform standard for merchants so they would not be subject to disparate and inconsistent state laws. 15 U.S.C. § 1681t(b)(5)(A).

Defendant initially argues that FACTA's truncation requirement does not apply to Plaintiff's transaction because: an e-mailed receipt is not a receipt but merely an e-mail that is not "print[ed]" pursuant to the terms of FACTA (Doc.10, pp. 1, 4-11); and

1

an e-mailed receipt is not provided "at the point of a sale or transaction" pursuant to the terms of FACTA (Doc.10, pp. 1, 11-13). Additionally, Defendant argues that conduct consistent with an objectively reasonable understanding of FACTA's requirement cannot constitute a willful violation. (Doc.10, pp. 1, 17-18). Finally, Defendant argues that even if FACTA's truncation requirement applies to Plaintiff's transaction, his complaint should be dismissed because Plaintiff's Complaint lacks any factual allegations that Defendant's actions were willful under FACTA.  (Doc. 10, pp. 1, 19-20).

Defendant's arguments are wrong.  First, FACTA was designed to prevent identity theft and to create a uniform standard preempting all state laws on the subject. Defendant argues that Plaintiff's electronic receipt falls outside the scope of FACTA because it was sent to Plaintiff by e-mail for an internet transaction, rather than physically handed to Plaintiff while the parties were standing next to each other at a retail store.  Defendant's argument is not supported by the plain language or stated purpose of FACTA.  Moreover, if Defendant's rationale was correct, then all merchants who take part in the billion dollar online retail business would be exempt from FACTA, even though Congress created no such exemption.  This would yield results that encourage identify theft, not prevent it.  Furthermore, Congress did not intend to preempt state truncation laws for face-to-face transactions while leaving the states free to create disparate and conflicting laws to govern internet transactions.

Second, Congress's use of the word "print" does not exclude the display of information on a computer screen.  Because sensitive information is "printed" to a

computer screen instead of a piece of paper does not mean that the sensitive information will not fall into the "wrong hands."  In today's world of computer hackers it is not hard to imagine that someone could more easily steal sensitive information from a person's e-mail bin than from their home garbage can.

Third, Congress's use of the phrase "point of sale" includes e-mail transactions. E-commerce was prevalent when FACTA was enacted and Congress's decision not to exclude internet transactions was intentional. Further, the e-mail confirmation of Plaintiff's hotel reservation constitutes a "receipt of a transaction" under FACTA.

 Forth, Defendant's argument that Plaintiff does not plead factual allegations that Defendant acted willfully is simply wrong as evidenced by Plaintiff's Complaint and premature. Finally, Defendant's argument that its understanding that FACTA is that FACTA does not apply to internet receipts is also baseless and premature. Therefore, the Court should deny Defendant's motion.

## FACTS

Defendant is a Minnesota corporation engaged in the hotel business and which operates an online website. Plaintiff alleges that "[O]n April 18, 2009, Plaintiff received from Defendant a computer-generated receipt by e-mail displaying the expiration date of Plaintiff's credit card.  Complaint at ¶ 18.  *See also* Exhibit A (Plaintiff's redacted receipt).

## LEGAL STANDARD

The Court must interpret the complaint in a light most favorable to plaintiff, accept the truth of the complaint's allegations, and give plaintiff the benefit of all

reasonable inferences drawn from the allegations. *See*, *e.g.*, *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545-46 (8th Cir. 1997); *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

A complaint should not be dismissed simply because the Court doubts whether Plaintiff will be able to *prove* all of the necessary factual allegations. *Parnes*, 122 F.3d at 546 (citation omitted). The Supreme Court has made clear that a court cannot dismiss a case based upon its disbelief of the factual allegations in the complaint: "What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations. District court judges looking to dismiss claims on such grounds must look elsewhere for legal support." *Nietzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832-33, 104 L.Ed.2d 338 (1989) ((footnote omitted)).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 129 S.Ct. at 1949 (internal quotations omitted) (emphasis in original) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Thus, a complaint should only be dismissed "in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Parnes,* 122 F.3d at 546. This is not one of those "unusual" cases -- there is no insuperable bar to relief. Rather, the allegations in the complaint set forth a cognizable claim for relief under FACTA.

Additionally, Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'  "*Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more that a "sheer possibility." *Id*.  It is not, however, a "probability requirement."  *Id*.  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'  "*Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974)).  As shown below, Plaintiff's Complaint meets this requisite threshold.

## ARGUMENT

**A.**   **FACTA should be broadly interpreted to honor Congress's intent to prevent identity theft and to preempt state laws on the subject.**

### 1.   FACTA was designed to prevent identity theft.

The purpose of FACTA is "to prevent identity theft...."  Pub. L. No. 109-159, 117 Stat. 1952.  Courts must interpret a statute's terms using their "settled common-law meanings unless the statute dictates otherwise." *United States v. Nash*, 115 F.3d 1431, 1436 (9th Cir. 1997). "In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Ordlock v. Commissioner of Internal Revenue*, 533 F.3d 1136, 1140 (9th Cir. 2008) *quoting McCarthy v. Bronson*, 500 U.S. 136, 139 (1991).

Defendant asks this Court to interpret FACTA "contrary to the clear intent" of Congress.  Defendant argues that numerous FACTA terms should be interpreted narrowly to exonerate Defendant.

FACTA's truncation provision states in relevant part:

(g) Truncation of credit card and debit card numbers

> (1)   In general
>
> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business **shall print** more than the last five digits of the card number or the expiration date **upon any receipt** provided by the cardholder **at the point of** sale **or transaction**.
>
> (2)   Limitation
>
> This subsection shall apply only to receipts that are electronically printed and shall not apply to transactions in which the sole means of recording a credit card or debit card number is by handwriting or by an imprint or copy of the card.

15 U.S.C. § 1681c(g) (emphasis added).  A court in the U.S. District Court for the Northern District of Illinois ruled as follows in a FACTA case:

> Where the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." [citation omitted] In interpreting statutes, courts give words their plain and ordinary meaning "unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." [citation omitted] Also, courts "must construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant; we favor the more reasonable result; and we avoid construing statutes contrary to the clear intent of the statutory scheme." [citation omitted]. Courts often look to dictionaries to determine the plain meaning of words.

*Harris v. Best Buy Co. Inc.*, 254 F.R.D. 82, 86 (N.D.Ill. 2008).

To honor Congress's FACTA purposes, an expansive or liberal interpretive approach must be taken.  For example, "print" has been defined to include "to produce (data) in legible alphanumeric form."  WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 1144 (1989).  And, "point" can refer to time.  *Id.* at 1110.  Thus, section 1681c(g) covers internet transactions such as the e-mail receipt in the instant case.  The alternative would produce an absurd result and diminish the express purpose of the law to protect consumers from identity theft.

If Defendant's reasoning is correct and FACTA does not apply to internet transactions, than this strict interpretation of FACTA would encourage identity theft, not prevent it. When a customer visits a potential merchant online, the merchant often touts its secure ordering process through systems like "VeriSign Secured." This is done to protect the customer's confidential credit card information from the massive amount of online fraud that takes place every day. After the transaction is over, an e-mail receipt sent to the customer is no longer protected by the company's secure ordering process. The e-mailed receipt is vulnerable to "cyber thieves" and computer hackers. In 2003, when FACTA was enacted, online retail sales reached $54.9 billion. Exhibit B. In 2009, online retail sales reached $156 billion. Exhibit C. To allow hundreds of millions of customer receipts to travel through the internet without redaction of sensitive information would yield absurd results contradictory to the stated purpose of FACTA. Thus, Defendant's motion to dismiss should be denied to ensure Congress's identity theft prevention purpose is honored.

### 2. FACTA was designed to create a uniform standard preempting all state laws on the subject.

FACTA was intended to preempt state laws and create a uniform standard for merchants so they would not be subject to disparate and inconsistent state laws. 15 U.S.C. § 1681t(b)(5)(A). Congress did not preempt state truncation laws for face-to-face transactions while leaving the states free to create disparate and conflicting laws to govern internet transactions.

Prior to FACTA there was no federal law governing truncation of credit card receipts. Many states already had passed such laws. *See, e.g.*, Wash. Rev. Code § 19.200.010; Cal. Civ. Code § 1747.09; Ariz. Rev. Stat. § 44-1367; La. Rev. Stat. Ann. § 9:3518.3; Colo. Rev. Stat. § 6-1-711; Fla. Stat. § 501.0118; Or. Rev. Stat. § 646A.204;

N.M. Stat. § 56-4-3.1; Nev. Rev. Stat. § 597.945; Md. Code Ann., Comm. § 14-318; Kan. Stat. Ann. § 50-669b; Mo. Ann. Stat. § 407.433; Neb. Rev. Stat. § 28-633; N.J. Stat. Ann. 56:11-42; N.Y. Gen. Bus. Law. § 520-1(4-a); Okla. Stat. tit. 15, § 752A; N.C. Gen. Stat. § 14-113.24; Tex. Bus. & Comm. Code Ann. § 502.02; Del Code Ann tit. 11, § 915a; Ga. Code Ann., § 10-15-3; Idaho Code Ann. § 25-51-103.

As might be expected, the state laws were not uniform.  For example, Oregon's statute provides that one may not "create" a receipt that shows "more information about a customer than the customer's name and the last five digits of the customer's credit card."  Or. Rev. Stat. § 646A.204(a).  On the other hand, the Maryland statute prohibits only more than "eight digits of the credit card number" and allows expiration dates. Md. Code Ann., Comm. § 14-318(c).

State legislative activity did not end with the passage of FACTA.[1]  For example, Washington amended its truncation statute effective July 26, 2009.  Wash. Rev. Code § 19.200.010.  The Washington truncation law, like truncation laws for many other states, is broadly drafted so that it applies to receipts printed electronically and e-mailed for internet transactions:

> (2) No person that accepts credit or debit cards for the transaction of business shall print more than the last five digits of the card account number or print the card expiration date on a credit or debit card receipt. **This includes all receipts kept by the person or provided to the cardholder**.
>
> (3) This section shall apply only to receipts that are electronically printed and shall not apply to transactions in which the sole means of recording the card number is by handwriting or by an imprint or copy of the credit

---

[1]     *See, e.g.*, Me. Rev. Stat. Ann. tit. 10, § 1149; Mich. Comp. Laws § 445.903(ii); R.I. Gen. Laws § 6-30-6; Va. Code Ann. § 11-33.2; N.D. Cent. Code § 51-07-27; Tenn. Code Ann. § 47-18-126; Alaska Stat. § 45.48.750; S.C. Code Ann. § 16-13-512; 815 ILCS 505/2NN(b).

or debit card. [Wash. Rev. Code. § 19.200.010 (emphasis added)].

Holt is a citizen of Illinois.  The Illinois statute states that a merchant may not "print or otherwise produce or reproduce or permit the printing or production or reproduction of" the prohibited information on "any receipt provided or made available to the cardholder."  815 ILCS 505/2NN(3).  Likewise, New Mexico's statute states that a merchant "shall not issue a receipt that lists more than five numbers from the cardholder's credit card account."  N.M. Stat. § 56-4-3.1.

If FACTA does not apply to receipts sent by e-mail, then it does not apply to these state laws that do include e-mail receipts.  As a result, credit card truncation standards would vary depending on which state's law might be applied to any given e-mail receipt.  That is not what Congress intended.

## B.      The e-mail receipt was "printed" under FACTA.

Defendant argues that receipts sent by e-mail are not "printed" receipts under FACTA.  In support of its view, Defendant relies on opinions that are wrongly decided [2] (Doc. 10, pp. 1-11).  FACTA's use of the word "print" includes the display of e-mailed receipts on a computer.  Moreover, Defendant's contention that the decisions that support Plaintiff's position, that an e-mail receipt constitutes a receipt under FACTA, were somehow improperly decided without the benefit of subsequent judicial interpretations is without merit (Doc. 10, p. 11). The relevant language of 15 U.S.C. §

---

[2]      Plaintiff acknowledges that some district courts have interpreted Congress's use of the word "print" or the phrase "point of the sale or transaction" to preclude application to internet sales.  *E.g., Turner v. Ticket Animal, LLC,* 2009 WL 1035241, at *3 (S.D. Fla. 2009); *Smith v. Zazzle.com, Inc.,* 589 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008); *Smith v. Under Armour, Inc.,* 593 F. Supp. 2d 1281, 1287 (S.D. Fla. 2008); *Grabein v. Jupiterimages,* 2008 WL 2704451, at *8 (S.D. Fla. 2008); *King v. Movietickets.com, Inc.,* 555 F. Supp. 2d 1339, 1340 (S.D. Fla. 2008); *Haslam v. Federated Dept. Stores, Inc.,* 2008 WL 5574762, at *4 (S.D. Fla. 2008); *Narson v. Godaddy.com, Inc.,* 2008 WL 2790211, at *5 (D. Ariz. 2008).  Plaintiff contends that these cases were wrongly decided.

1681c(g)(1) has not changed since 2003.  As a result, any court's interpretation of 15 U.S.C. § 1681c(g)(1), at any time, may serve as persuasive authority.

### 1. The plain meaning of "print" does not exclude the display of information on a computer screen.

Dictionary definitions of "print" include: "*Computer Technol.* to produce (data) in legible alphanumeric form." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 1144 (1989), and "PRINT OUT; also; to display on a surface (as a computer screen) for viewing," MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 927 (10th ed. 1993).  The "plain meaning" of "print" does not exclude the display of information on a computer screen, e-mail, or otherwise.  Moreover, there is no language contained within FACTA that Congress intended to exclude receipts displayed on a computer screen.

### 2. Numerous courts have held that e-mailed receipts fall within the scope of FACTA.

Contrary to Defendant's assertion, numerous Courts facing arguments identical to those offered by Defendant here have held that e-mailed receipts fall within the scope of FACTA.  In *Harris v. Best Buy Co. Inc.*, 254 F.R.D. 82, 86 (N.D. Ill. 2008), the court recognized the numerous well-established meanings located in "[t]he Miriam-Webster Collegiate Dictionary, Eleventh Edition—that was published in 2003—[which] defines the verb 'print'" in numerous ways.  *Id.*  The Court noted its agreement with another district court's reasoning that:

> Defendant's argument that Congress aimed to reduce the likelihood of sensitive personal information falling into the wrong hands by mandating truncated information on in-store paper receipts while failing to mandate the same truncation requirements on electronic receipts transmitted over vulnerable digital communication lines is unreasonable.

*Id.*, quoting *Grabein v. 1-800-Flowers.com*, Inc., No. 07-22235-CIV, 2008 WL 343179, *3 (S.D. Fla. Jan. 29, 2008) ("[T]he Court finds that the ordinary meaning of the term "print" encompasses the information included when a seller electronically transmits a

receipt."). (applying FACTA to transactions occurring at www. 1800flowers.com)

     *See also Romano v. Active Network Inc.*, No. 09 C 1905, 2009 WL 2916838 (N.D. Ill. Sept. 3, 2009) ("During an e-mail internet transaction, such as the one at issue in this case, ANI published the information in the same way that it would have done had it handed Romano a paper receipt in person."); *Ehrheart v. Bose Corp.*, Civil Action No. 07-350, 2008 WL 64491, *6 (W.D. Pa. Jan. 4, 2008) ("Where internet shopping is a significant component of the total retail market, the court is not persuaded that Congress intended this exclusion."); *Vasquez-Torrez v. Stubhub*, Case No., CV 07-1328 PSG, 2007 U.S. Dist. Lexis 63719, *9 (C.D. Cal. 2007) ("Furthermore, had Congress desired such an exclusion, they would have explicitly done so, as they did for 'transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.' ") (applying FACTA to transactions at www.stubhub.com); *Harris v. Circuit City Stores, Inc.,* No. 07 C 2512, 2008 WL 400862, *1-*2 (N.D. Ill. Feb. 7, 2008) (certifying class of internet customers) ("It is undisputed that … Circuit City's online system at www.circuitcity.com 'generated an email confirmation of the transaction'" … "There is no dispute that, … the email … display[ed] the expiration date on [plaintiff's credit] card….").

     Defendant also incorrectly relies on the opinion in *Shlahtichman v. 1-800 CONTACTS, Inc.*, No. 09-CV-4032, 2009 WL 4506535 (N.D. Ill. Dec. 2, 2009).  That court relied on a definition in the OXFORD ENGLISH dictionary, but that dictionary also includes definitions of print that encompass displaying information on a screen. *Grabein*, 2008 WL 343179, *3 ("But the Oxford English Dictionary also defines 'print' as 'to set on any surface, by writing,' … and '[t]o mark (paper etc.) with printed characters …' The word mark is not limited to specific surfaces; instead paper is listed

as one example of a surface that can be marked, leaving room to conclude that a computer screen is another surface that can be marked."). The *Shlahtichman* court summarily dismissed the MERRIAM-WEBSTER's definition as "an alternate sub-definition meant to be associated with the verb 'print out.'" *Shlahtichman*, 2009 WL 4506535, *3. The Webster's definition is not a "sub-definition of "print out." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 1144. It is a definition that applies in the context of "computer technology," and there is no reason to assume that Congress did not have computer technology in mind when it passed FACTA. *Id.*

### 3. Congress's use of the words "electronically printed" only intended to exclude handwritten receipts or an imprint copy of a credit card, not an e-mailed receipt.

Another judge in the U.S. District Court for the Northern District of Illinois explained that Congress recognized only one small limitation on receipts in FACTA:

> We also note that in Section 1681c(g) Congress indicated that the statute "shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card." 15 U.S.C. § 1681 c(g). In using such language, Congress distinguished between electronically generated receipts as opposed to receipts prepared by hand or by imprints. Obviously, businesses that use electronic equipment are capable of transmitting the full number of the credit card to the credit card processing center in order to receive payment and at the same time are capable of redacting certain numbers of the credit card when providing electronically generated receipts to the consumer in order to protect the consumer. In contrast, businesses where the sole means of recording a credit card number is by hand or by an imprint are exempt under this law because the handwritten or imprinted receipt card number is required to be forwarded to the credit card processing center in order to receive payment, and hence the receipt provided to the customer is a carbon copy of that document containing the full number. [*Romano*, 2009 WL 2916838, *3.]

*See also Stubhub,* 2007 U.S. Dist. Lexis 63719 ("if Congress desired [to exclude online transactions], it would have explicitly done so as it did for transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.…"); *TRW Inc. v. Andrews,* 534 U.S. 19 (2001) ("Where

Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").  An enumeration of specific exclusions from the statute's application is a good indication that the statute should apply to all situations not specifically excluded. *Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542 (7th Cir. 1985).

Defendant's e-mail receipt to Plaintiff is an electronically printed receipt and does not fall within any express limitation recognized by Congress.  Therefore, Plaintiff has sufficiently pleaded that Defendant's e-mail receipt falls within the FACTA requirements and the Court should deny Defendant's motion to dismiss.

**C.      Because the plain meaning of "transaction" includes a hotel reservation guarantee, Plaintiff has sufficiently alleged a "transaction of business."**

Defendant argues that Plaintiff's claim fails because the e-mail confirmation of his reservation is not a "receipt" of a **transaction** (Doc. 10, p. 13).  Defendant's argument is misplaced because numerous dictionaries define the word "transaction" to encompass an e-mail confirmation of a hotel reservation guarantee.

- Transaction: n. "1. the act or an instance of conducting business or other dealings. 2. something performed or carried out; a business agreement or exchange. 3. any activity involving two or more persons." BLACK'S LAW DICTIONARY (8th ed. 2004);

- Transaction: n. "1. The act of transacting or the fact of being transacted. 2. Something transacted, especially a business agreement or exchange." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2004); and

- Transaction: n. "an action or activity involving two parties or things that reciprocally affect or influence each other."  MERRIAM-WEBSTER'S DICTIONARY OF LAW (1996).

Further, the definition of "business" includes:

- "Commercial, industrial, or professional dealings" THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, (4th ed. 2004); and

- "1. A commercial enterprise carried on for profit; ... 2. Commercial enterprises ... 3. Commercial transactions ... 4. By extension, transactions or matters of a noncommercial nature...." BLACK'S LAW DICTIONARY (8th ed. 2004).

Here, Plaintiff gave Defendant his credit card information and Defendant used it to guarantee a hotel reservation. That is a form of a "transaction of business" or a "business transaction" falling within one or more of the above listed definitions.[3]

**D.**    **Plaintiff is not collaterally estopped from alleging that the e-mail confirmation constitutes a receipt provided by LivInn.**

A previously stated, Plaintiff alleges that "[O]n April 18, 2009, Plaintiff received **from Defendant** a computer-generated receipt by e-mail displaying the expiration date of Plaintiff's credit card. Complaint at ¶ 18. The Court is to accept the truth of this allegation. Nevertheless, Defendant contends that Plaintiff is collaterally estopped from disputing that LivInn provided Plaintiff an e-mail confirmation and that it constitutes a receipt. Defendant is incorrect. In support of its erroneous position, Defendant relies upon an order entered in the Illinois action entitled *Holt v. LivInn Suites, Ltd.*, Case No. 09-cv-4327 in which the Court dismissed Defendant, LivInn, for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (See Order attached as Exhibit D). This order is not a final judgment on the merits.

Federal Rule of Civil Procedure 41(b) is very clear in declaring that a dismissal for lack of jurisdiction does not "operate [ ] as in adjudication upon the merits". The rational underlying this Rule is obvious:

---

[3]    Defendant cites inapposite cases that relate only to the personal jurisdiction "minimum contacts" test. Doc. 10, p. 8, *citing Bell v. Imperial Palace Hotel/Casino, Inc.*, 200 F.Supp. 2d 1082 (E.D.Mo. 2001); *Arriaga v. Imperial Palace, Inc.*, 252 F.Supp. 2d 380 (S.D.Tex. 2003).

"[M]erely because one court does not have jurisdiction over a dispute does not necessarily mean that another court is precluded from properly exercising jurisdiction over the matter.  Moreover, if a court does not have jurisdiction over a matter, it cannot properly reach the merits of the case." *Wilkins v. Jakeway,* 183 F. 3d 528 (6th Cir. 1999).

The basic principle that a dismissal for lack of subject mater jurisdiction does not preclude a second action on the same claim is well settled law.  18 C. Wright A. Miller, & E. Cooper, Federal Practice and Procedure § 4436 168-70 (2d ed. 1990). Numerous Courts throughout this nation have held that dismissal for lack of personal jurisdiction is not an adjudication of the merits. *See Gillig v. Nike, Inc.,* 2010 WL 1541636 (C.A. Fed. Tex. 2010); *Siler v. Dillingham Ship Repair,* 2008 WL 2959563 (9th Cir. 2008); *Progressive Minerals LLC v. Rashid,* 2008 WL 4416408 (N.D. W. VA. 2008); *Holloway v. Brush,* 220 F.3d 767 (6th Cir. 2000) (holding that when a case is dismissed for lack of subject matter jurisdiction, nothing has been "litigated and decided" and neither set of principals come into play.) Such should be the case here.

Furthermore, Plaintiff's Complaint against Defendant is not collaterally estopped because there was no relitigation of an issue that was previously decided by another court **as a final judgment**. See *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *W. F. N., Inc., v. Cherry County*, 279 F. 3d 640, 643 (8th Cir. 2002); *Schumacher v. Halverson*, 467 F. Supp.2d 939, 945-46 (D. Minn. 2006).  For collateral estoppel to apply, each of the following elements must be satisfied: (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.  *Ortega-*

*Maldonado v. Allstate Ins. Co.*, 519 F. Supp.2d 981(D. Minn. 2007). Since the requirement of a prior final adjudication on the merits has not been met, Plaintiff should be permitted to proceed with his Complaint against Defendant in the instant case.[4]

### E.   Plaintiff has sufficiently alleged the point of sale or transaction.

Defendant argues that the e-mail receipt was not provided at the "point of sale or transaction" as required by FACTA (Doc. 10, p. 11). (citing *Shlahtichman* opinion). Defendant's argument is faulty. "Point" can refer to a particular location or time. Webster's Encyclopedic Unabridged Dictionary 1110 (1989) ("a particular instant of time"). There is no reason to presume that Congress was referring exclusively to a precise geographic location, as opposed to a point in time or even a location in cyberspace. Just because Defendant sent the receipt by e-mail does not mean FACTA's protections can be ignored. *See Best Buy*, 254 F.R.D. 82; *Romano*, 2009 WL 2916838; *Circuit City,* 2008 WL 400862, *1-*2; *Grabein*, 2008 WL 343179, *5 (In rejecting the same proffered interpretation of this phrase by defendant , the court declined to draw a distinction between receipts provided to the cardholder at the location of the credit/debit machine and those receipts provided elsewhere. This is because the relevant factor under FACTA is to prohibit the unnecessary inclusion of sensitive cardholder information on customer receipts, and the inclusion of such information on a receipt, no matter where the customer receives it, can lead to identity theft); *Vasquez-Torrez*, 2007 U.S. Dist. Lexis 63719, *9. This is especially true in light of the fact that e-commerce was prevalent when Congress debated and enacted FACTA in 2003. Its decision not to

---

[4]     Defendant reliance upon the *Lindquist and Liberty Mutual* decisions is misplaced because Plaintiffs in those cases were barred from relitigating the same set of facts, in a second lawsuit, that had been previously litigated in a prior lawsuit which resulted in a final judgment on the merits.

exclude internet transactions speaks volumes and contradicts Defendant's absurd position:

> Congress did not say that the statute applied with respect to any "receipts" provided in person, but stated that it applied with respect to any "cash register or other machine or device that electronically prints receipts for credit card or debit card transactions...." 15 U.S.C. § 1681c(g).  Thus, we conclude that Section 1681c(g), consistent with the goal of protecting consumers, covers internet transactions such as the one at issue in the instant action.  [*Romano*, 2009 WL 2916838, *3.]

> The court finds that the surrounding facts and the general purposes underlying FACTA favor the Plaintiff's broader reading of the phrase "point of sale." … Reading the term narrowly to refer to the interior of a store, or even more narrowly to mean a particular cash register or ATM machine raises the likelihood of absurd results that depend more on serendipity than on any rational reading of the law.  … If the court were to adopt the Defendant's interpretation of FACTA, the statute would not reach the theft of information secured as the result of an online transaction, because buyers' computers are located outside of-maybe thousands of miles from-the retail premises. [footnote omitted] Where internet shopping is a significant component of the total retail market, the court is not persuaded that Congress intended this exclusion. In sum, the court is not convinced by the Defendant's argument, and would not adopt its narrow reading of 15 U.S.C. § 1681c(g).  [*Ehrheart*, 2008 WL 64491, *5-6.]

Further, even if "point of sale" means the physical place where the transaction is consummated, then FACTA covers the transaction at issue here.  The physical place where the transaction occurred is wherever Defendant's consumers make the on-line purchase.  *Interactive Gift Express, Inc. v. CompuServe Inc.,* 256 F.3d 1323 (2001) (the "point of sale" location is simply wherever the consumer makes a transaction).[5]  The application of this meaning makes sense since Defendant is conducting business over the internet. If Defendant's position were accepted as true, FACTA liability could be avoided simply by conducting business on the internet only.  In Defendant's view,

---

[5]      *General Motors Corp., v. Keystone Automotive Indust.,* 453 F.3d 351, (6th Cir. 2006) (the court ruled in a trademark infringement action that "point of sale" refers to the time of the purchase without regard to the purported place of a transaction.  There, the court noted that the "point of sale" for the potentially infringing merchant included both physical stores and direct to consumer internet sales).

Congress meant to regulate cash register receipts at a Minneapolis diner, but not interstate transactions between citizens of different states doing business over the internet.  Defendant's narrow interpretation of this term would basically give it a free pass to violate FACTA.  Clearly this was not Congress's intent; especially considering the billions of dollars in online retail sales since 2003.  Exhibits B and C.

Plaintiff has sufficiently pleaded that Defendant provided the e-mail receipt to him "at the point of" the transaction.

### F.     Plaintiff has adequately alleged "Willfulness."

Defendant argues that Plaintiff's Complaint should be dismissed because Defendant's interpretation of FACTA in not applying to an e-mail receipt is objectively reasonable (Doc 10, pp 16-18). Defendant argues that "[t]he same factors that controlled the *Safeco* decision here apply and compel dismissal of Plaintiff's Complaint." (Doc. 10, p. 18).  Defendant is incorrect.

"Willfulness" includes both reckless and knowing violations of the statute.[6] *Safeco Ins. Co. of America v. Burr*, 127 S.Ct 2201, 2208-09 (2007) ("We have said before that 'willfully' is a 'word of many meanings whose construction is often dependent on the context in which it appears' … [W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id*.  "The standard civil usage thus

---

[6]     If a plaintiff can establish that the defendant "willfully" failed to comply with the FACTA requirements, then he or she can recover actual or statutory damages under the statute.  15 U.S.C. § 1681n(a) ("Any person who *willfully* fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable….") (emphasis added).  The consumer may get either actual damages or "damages of not less than $100 and not more than $1000."  15 U.S.C. § 1681n(a)(1)(A).

counsels reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations….").

Further, unlike *Safeco* where there was a "dearth of guidance" on the issue involved here, numerous courts have held that § 1681c(g) encompasses internet receipts. A number of courts around the nation, including the Central District of California, the Southern District of Florida, and the Northern District of Illinois, have ruled that it is a violation of FCRA to include a credit card expiration date on an internet receipt. Furthermore, the FTC has been very clear about the extraordinary dangers posed by having credit card information on the internet:

> The internet has dramatically altered the potential occurrence and impact of identity theft. First, the internet provides access to identifying information, to both elicit and legal means. The global publication of identifying details that previously were available only to a select few increases potential for misuse of that information." Prepared Statement Of The Federal Trade Commission On Identity Theft Before the Committee On Banking And Financial Services United States House of Representatives, Washington, D.C. September 13, 2000 Assistant Director of the FTC, Betsy Broder.

> This point was further addressed:

> "Focus on online as well as off-line."

> "Finally, a third change in our approach to privacy is the scope of our concerns. The FTC's previous efforts were focused on addressing consumer's concerns about online data collection. If the concern is reducing adverse consequences that can occur when information is misused, then it does not matter whether information is originally collected online or off-line. It simply matters if it is misused. **The risk of identity theft for example is no less real and its consequences no less different than if a thief steals your credit card number from a website or from the mailbox in the front of your home."** *Protecting Consumer's Privacy: Goals and Accomplishments*, Remarks of FTC Chairman Timothy J. Muris At The Networked Economy Summit, Reston, Virginia, June 11, 2002. ( Emphasis Added).

*Safeco* dealt with the question of a reckless violation of the statute. Here, Plaintiff's allegations are that Defendant "knew or should have known" that it was in non-compliance with FACTA. Although recklessness is decided under an objective standard, it nonetheless also requires a fact finder to consider evidence of a violator's "actions and intentions," including its "actual understanding of the law" to determine

whether a standard was met in a particular case.  In *Claffey v. River Oaks Hyundai, Inc.*, 494 F.Supp.2d 976 (N. D. Ill. 2007) Judge Kennelly expressed:

> "COAF argues that the Supreme Court's adoption [in *Safeco*] of an objective standard for reckless disregard takes intent out of the picture and makes irrelevant an inquiry into the subject of opinions of COAF Personnel.  This argument is utterly without merit.  First of all, the Defendant in the *Safeco* case agreed, and the court assumed, that under FCRA, a "knowing" violation of the law constitutes willfulness.  See *Id*. at 2208.  In other words, reckless disregard is not the sole means approving willfulness.  Second, the "objective" standard for recklessness that the court adopted does not render irrelevant evidence of a parties' actual understanding of the law.  Indeed, the court said that it was adopting a common law definition of recklessness, which is described as "action entailing in unjustifiably high risk of harm that is either known or so obvious that it should have been known." *Id* at 2215.  Evidence of a party's actions and intentions is unquestionably relevant in determining whether that standard is met in a particular case."

Thus, Defendant's argument that it could not have violated the statute because its counsel thinks its reading is plausible is premature, requiring this Court to go beyond the factual allegations contained in the complaint.  *Harris*, 2007 WL 3046162, *3; *Hospitality Plus,* 532 F. Supp. 2d at 963 ("We are only concerned with the sufficiency of the complaint and defendant's argument goes beyond the complaint, asking us to consider its interpretation of the statute.").

Further, Plaintiff sufficiently alleges willfulness.  The Complaint alleges that FACTA was enacted in 2003 and gave merchants three years—to December 4, 2006—to come into compliance with the law's requirements before they could be sued.  (Class Action Complaint, ¶ 7.)  The Complaint alleges that on June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007 was enacted by Congress "to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date" on receipts printed before June 3, 2008.  *Id.*, ¶¶ 8, 9, 32.  The Complaint alleges that Defendant "willfully violated" the

Clarification Act by printing credit/debit card expiration dates on receipts after June 3, 2008. *Id.*, ¶ 10.

The Complaint alleges that the FTC has enacted rules governing the interpretation of FACTA.  *Id.*, ¶ 34 (quoting Bureau of Consumer Protection, Federal Trade Commission, *Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007)).  The Complaint alleges that "[m]ost of defendant's business peers and competitors readily brought their processes into compliance with FACTA by programming their credit card machines and devices to comply with the truncation requirement" and that "Defendant could have readily done the same" and at very "minimal" cost. *Id.*, ¶¶ 35- 36.

These allegations more than plausibly suggest that Defendant willfully violated the statute.  "The willfulness issue cannot always be resolved at the motion to dismiss stage since it may involve facts beyond the pleadings.  … Romano has stated a valid FACTA claim and it is premature based on the complaint before us to resolve the willfulness issue. Therefore, we deny ANI's motion to dismiss the willfulness claims. *Romano*, 2009 WL 2916838, *3 (citing the *Safeco* decision).

Defendant conveniently ignores the fact that many district judges, mostly after *Bell Atlantic v. Twombly* and/or *Safeco*, have found allegations similar or identical to Plaintiff's to sufficiently allege a claim for a willful violation of Section 1681c(g).  *E.g.*, *Wal-Mart*, 2007 WL 3046162, *2 ("Harris's factual allegations clearly raise the right to relief above a speculative level; and his claim is, therefore, sufficiently plead, within the requirements outlined by the United States Supreme Court in *Bell Atlantic.*"); *In re The*

*TJX Companies, Inc.*, MDL No. 1853, 2008 WL 2020375, *2 n.5 (D. Kan. May 9, 2008) ("Defendants' suggestion that *Bell Atlantic Corp.* [*v. Twombly*] somehow undermines this weight of authority is without merit. Each of the cases applied the plausibility standard set forth in that decision."); *Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 784-85 (N.D. Ill. 2007) (Der-Yeghiayan, J.) ("[W]e conclude that sufficient allegations have been pled … that plausibly suggest that Leiblys willfully violated FACTA."); *Troy v. Home Run Inn, Inc.*, No. 07 C 4331, 2008 WL 1766526, *2 (N.D. Ill. April 14, 2008); *Follman v. Village Squire, Inc.*, 542 F. Supp. 2d at 820 (N.D. Ill. Dec. 18, 2007) (Kendall, J.) ("Follman has sufficiently alleged willfulness under this definition."); *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F. Supp. 2d 960, 963 (N.D. Ill. 2007) (Moran, J.) ("We find these allegations plausibly suggest that defendant willfully violated the statute."); *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 971-72 (C.D.Cal.2007) ("Adidas' Conduct is properly alleged to be 'Willfull'" [sic]); *Aeschbacher v. California Pizza Kitchen, Inc.*, No. CV 07-215, 2007 WL 1500853, *3-4 (C.D.Cal. Apr. 3, 2007) ("Defendant's argument lacks merit. … Moreover, 'willfulness' is not an element of the underlying conduct at issue, but merely a prerequisite to the awarding of statutory, as opposed to actual, damages."); *Pirian v. In-N-Out Burgers,* No. SA CV 06-1251, 2007 WL 1040864, *7 (C.D. Cal. Apr. 5, 2007) ("Plaintiff has adequately alleged willfulness."); *Lopez v. The Gymboree Corp.,* No. C 07-0087, 2007 WL 1690886, *2 (C.D. Cal. June 8, 2007) ("The court finds that these allegations of both knowing and reckless conduct are sufficient to allege 'willfulness' under the FACTA."); *Korman v. The Walking Co.,*

503 F. Supp. 2d 755, 762 (E.D. Pa. 2007) ("Plaintiff has adequately plead 'willfulness'"); *Steinberg*, 2009 WL 2589142, *3-4 ("Plaintiff's complaint sufficiently alleges willful noncompliance…."); *Bauer*, 2008 WL 2261764, *1; *In re The TJX Companies, Inc.*, 2008 WL 2020375, *2-3 ("In fact, plaintiffs' allegations are typical of FACTA claims, and courts have almost uniformly rejected the argument that such allegations do not sufficiently allege willful violations of the statute." [citing numerous cases] … In light of the overwhelming weight of authority which suggests that the complaint sufficiently alleges willful violations of FACTA, the Court overrules defendants' motion to dismiss for failure to state a claim.").

Finally, Defendant's argument that it did not reasonably believe that FACTA's requirements applied to the e-mail receipt it sent to the Plaintiff is baseless. Defendant's own conduct in truncating the digits of Plaintiff's credit card number down to the last four digits shows that this argument lacks any merit. *See* <u>Exhibit A</u> (Plaintiff's redacted receipt). Defendant was utilizing special computer software when processing the transactions with Plaintiff and other customers, to eliminate the exact personal information that FACTA mandated be eliminated from a receipt.  This conduct on its part conclusively establishes that it knew the transactions it was engaging in with its customers on-line over the internet were subject to FACTA.

The Court should deny Defendant's motion because Plaintiff has sufficiently alleged Defendant's "willfulness" in violating FACTA.

## **CONCLUSION**

Because Plaintiff's Class Action Complaint is sufficiently pleaded, the Court should deny Defendant's Motion to Dismiss pursuant to Rule 12(b)(6).

Dated ___April 27, 2010

Respectfully submitted,


*s/Brant D. Penney*_____
BRANT D. PENNEY, #316878
REINHARDT, WENDORF & BLANCHFIELD
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN  55101
Telephone:  (651)287-2100
Fax:  (651)287-2103


BRIAN J. WANCA
JONATHAN E. IRWIN
ANDERSON + WANCA
3701 Algonquin Road, #760
Rolling Meadows, IL 60008
Telephone:  (847) 368-1500
Fax:  (847)368-1501


PHILLIP A. BOCK
BOCK & HATCH, LLC
134 North LaSalle Street, #1000
Chicago, IL  60602
Telephone:  (312)658-5500
Fax:  (312)658-5555

*Attorneys for Plaintiff Timothy Holt*