UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Timothy Holt, Individually, and on behalf of a class,<br><br>Plaintiff,<br><br>v.<br><br>LivINN Suites, Inc.,<br><br>Defendant. | Court File No. 10-cv-00383 (RHK/RLE)<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

## INTRODUCTION

FACTA's receipt truncation provisions prohibit printing expiration dates on "printed" receipts provided to the cardholder "at the point of the sale or transaction." 15 U.S.C. § 1681c(g). In its Initial Memorandum, Defendant demonstrated that the e-mail confirmation at issue is not a printed receipt provided at the point of sale by Defendant. Moreover, Defendant established that any conceivable violation by Defendant cannot, as a matter of law, have been willful because Defendant's view of FACTA's receipt truncation requirement and Defendant's alleged conduct was objectively reasonable.

In opposition, Plaintiff contends that a broadly-stated general Congressional intent should trump the plain language of FACTA's receipt truncation requirement and argues that the transmission of an e-mail confirmation may constitute a willful violation of FACTA's receipt truncation requirement. As previously demonstrated and as confirmed below, Plaintiff's positions do not comport with the language of FACTA's receipt truncation requirement, its purpose, its legislative history, or the vast majority of case

law.[1] Each of Plaintiff's arguments overreach by relying on broad unsupported generalizations, while ignoring basic principles of statutory construction as well as Defendant's arguments.

I. **LIVINN DID NOT VIOLATE FACTA BY SENDING PLAINTIFF THE E-MAIL CONFIRMATION IN QUESTION.**

   A. **E-mail Confirmations Are Not "Printed" Receipts Subject to FACTA.**

The term "printed" as used in FACTA's receipt truncation provisions can refer only to paper documents, and does not reach e-mail confirmations sent to customers that "display" credit card expiration dates when opened. *See generally* Def.'s Memo. In Supp. of Motion to Dismiss at 4-11 (hereinafter "Initial Memo."). Defendant's construction of the statute is consistent with the plain, ordinary meaning of the word "printed." Defendant cited numerous dictionary definitions to prove that point. *Id*. Moreover, this plain meaning of "printed" is consistent with the statutory context—which reinforces the focus on paper receipts by referencing point of sale and cash registers— and is consistent with the legislative history, which focuses on "dumpster diving" and other means of stealing information printed on paper receipts. *Id.* Finally, as Defendant previously demonstrated, the majority of courts to consider this issue have held that

---

[1] Insofar as plaintiff in the *Shlahtichman v. 1-800 Contacts, Inc.* matter (which is now pending before the Seventh Circuit Court of Appeals) made the same arguments and relied on the same authorities, Defendant has adopted some of the same arguments and authorities as the defendant in that matter. *See generally* Brief of Defendant-Appellee, *Shlahtichman v. 1-800 Contacts, Inc.,* No. 09-4073, Docket No. 14 (March 9, 2010) (providing a more extended discussion of certain issues addressed throughout this memorandum).

FACTA's receipt truncation provisions do not apply to e-mail or other electronic transmissions, but only to paper receipts.

> **1. Plaintiff Ignores The Vast Majority of The Available Dictionary Definitions and Urges This Court to Adopt An Outlier Definition of The Meaning of "Print."**

This Court's analysis should begin and end with the plain and ordinary meaning of "print." Resorting to legislative history "is only justified where the face of the statute is inescapably ambiguous." *Holder v. Hall*, 512 U.S. 874, 932 n.28 (1994). Thus, "[w]here the language of a statute is unambiguous, the statute should be enforced as written unless there is clear legislative intent to the contrary. . . . If the intent of the statute is clear, the judicial inquiry ends." *See Haug v. Bank of Am., N.A.,* 317 F.3d 832, 835 (8th Cir. 2003) (citations and internal quotations omitted). The term "print" means to transfer images onto paper or similar material. In its Initial Memorandum, Defendant provided the Court with a series of consistent definitions from widely-used dictionaries that confirm this plain meaning of the word "print." Plaintiff ignores all those definitions. Instead, Plaintiff cites two outlier and inapplicable dictionary definitions in support of his contention that print can also mean the "display of information on a computer screen, e-mail or otherwise." Opp. Memo. at 10.

The main definition on which Plaintiff relies is the alternate sub-definition "(d)" of the second of four definitions, and actually defines the verb "print out" *See* Opp. Memo., at 10 (citing Merriam-Webster's Collegiate Dictionary). In rejecting an identical argument, based on the same dictionary definition, one court noted that:

> Plaintiff's suggested definition is more than just an alternative definition of the term "print." It is the fourth definition, and it comes with a qualifier: that the particular definition is to be associated with the word "print out;" the verb "print out" is "to make a printout of;" and the noun "printout" is "a printed record produced automatically (as by a computer)." *Id.* Extrapolating Plaintiff's definition supports our position that "print" must involve some sort of tangible "printed record." *Grabein v. Jupiterimages Corp.*, 2008 WL 2704451, at *6 (S.D. Fl. July 7, 2008).

The term "printed" means the same thing now as it always has—the transfer of images onto paper. Where a term has one settled and commonly-accepted meaning that appears in every dictionary, the existence of an alternate, little-used dictionary definition appearing in a minority of dictionaries does not alter plain meaning or create ambiguity. *MCI Telecommunications Corp. v. Am. Telephone & Telegraph Co.*, 512 U.S. 218, 225-27 (1994).

      **2.**      **Plaintiff Ignores The Majority Decisions On This Issue And Urges This Court to Adopt A Position That Necessarily Runs Against Fundamental Principles of Statutory Construction.**

Plaintiff also relies on the minority cases, which have erroneously suggested that FACTA's receipt truncation requirement may apply to e-mail and other electronic transmissions. *See* Opp. Memo. at 10-11 (citing *Romano v. Active Network Inc.*, No. 09 C 1905, 2009 WL 2916838 (N.D. Ill. Sept. 3, 2009) (Der-Yeghiayan, J.); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82 (N.D. Ill. 2008) (St. Eve, J.); *Grabein v. 1-800-Flowers.com, Inc.*, No. 07-22235-CIV, 2008 WL 343179 (S.D. Fla. Jan 29, 2008); *Vasquez-Torres v. Stubhub, Inc.*, No. CV 07-1328, 2007 U.S. Dist. LEXIS 63719 (C.D. Cal. July 2, 2007)). These cases erred in their interpretation of the statute, disregarded the basic principles of statutory construction, and are unpersuasive.

With any statutory construction, "[t]he beginning point must be the language of the statute." *Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992).  If the statute does not expressly define a word or term, courts presume that Congress intended the word's ordinary meaning.  *Williams v. Taylor*, 529 U.S. 420, 431 (2000).  Moreover, courts are to consider the ordinary meaning of words "in the context of the statutory scheme in which they appear."  *Pace v. DiGuglielmo*, 544 U.S. 408, 420 (2005).  The minority decisions relied upon by Plaintiff fail to follow these fundamental rules, substitute their own judgment as to the scope of the problem Congress should or could have addressed, and inappropriately construe the term "printed" through their own lens.  *See Romano*, 2009 WL 2916838, at *2; *Best Buy*, 254 F.R.D. at 87; *1-800-Flowers.com*, 2008 WL 343179, at *3; *Stubhub*, 2007 U.S. Dist. LEXIS 63719, at *8-9.  At base, the minority decisions presume that Congress must have intended for FACTA to address the privacy risk of e-mail (which is precisely what Plaintiff here argues).  That presumption is unfounded.  At the time FACTA's receipt truncation requirement was passed, there were already numerous statutes protecting e-mail and electronic communications.  *See generally infra* at 11-12.  Congress did not intend for Section 1681c(g) of FACTA to address every possible threat to privacy.  It focused on one security issue, which had not already been addressed by other statutes, the one that Plaintiff's Complaint identifies as "more common" (Compl. at ¶ 6): paper receipts.

If Congress had intended that Section 1681c(g) to apply to e-mail, Congress would have expressly provided for such coverage.  As other federal statutes make plain, Congress knows how to craft legislation covering internet transmissions, where that is its

intent. *See generally infra* 11-12. By inappropriately substituting their view of what Congress might have intended in connection with FACTA's receipt truncation requirement, the minority decisions ignore the plain meaning of the language and substantially rewrite the statute.

This Court should read "printed" in its plain and ordinary sense, as have the majority of courts to consider the question, and dismiss the Complaint.

**B.   FACTA Does Not Apply Because The E-mail Confirmation Was Not Provided To Plaintiff At The "Point Of The Sale Or Transaction."**

As Defendant demonstrated in its Initial Memorandum, Plaintiff's claim is also legally deficient because Plaintiff alleges that Defendant received the e-mail confirmation "at his home" and not at the point of the sale or transaction. *See generally* Initial Memo., at 11-13; Compl. ¶ 18.

Plaintiff ignores Defendant's argument and contends that "there is no reason to presume that Congress was referring exclusively to a precise geographic location, as opposed to a point in time or even a location in cyberspace." Opp. Memo. at 16. To support his contention, Plaintiff refers the Court to the same minority decisions and urges that this Court once again ignore the plain meaning of FACTA's receipt truncation provisions.

The term "point of sale" has a commonly understood meaning.[2] This definition constitutes the plain and ordinary meaning of the phrase "point of sale" and the analysis

---

[2] Like the term print, numerous dictionary definitions confirm Defendant's position. *See*, *e.g.*, Dictionary.com, *available at* http://dictionary.reference.com (search "point of sale") (last accessed May 4, 2010) ("the store, dealer, or other retail outlet where an item is

should end there. *See Smith v. Under Armour, Inc.*, 593 F. Supp. 2d 1281, 1285-86 (S.D. Fla. 2008); *Narson v. Godaddy.com, Inc.*, No. CV-08-0177, 2008 WL 2790211, at *5 (D. Ariz. May 5, 2008).

To the extent the Court elects to proceed beyond the plain and ordinary meaning, comparing FACTA's receipt truncation requirement with other legislation confirms the Congressional intent that the Section apply only to receipts generated at the physical location of a transaction. Notably, in other statutes, Congress has explicitly distinguished "point of sale" from "the Internet" which indicates that Congress does not understand the former to include the latter. *See* 49 U.S.C. § 32304A(a)(2)(B) (future agency "rulemaking shall include . . . requirements for providing information to consumers, including information at the point of sale and other potential information dissemination methods, including the Internet").[3]

In addition, Plaintiff contends that the point of sale, *i.e.* the "physical place where the transaction occurred is wherever Defendant's consumers make the on-line purchase." Opp. Memo. at 17. This argument also fails. The authority Plaintiff cited in support of

---

sold"); Wictionary.org, *available at* http://en.wiktionary.org (search "point of sale") (last accessed May 4, 2010) ("In an establishment that sells goods or services, the location at which payment for the goods is made.").

[3] In other instances, Congress has repeatedly used "point of sale" or "point of the sale" to reference a location at which a sale takes place. *See, e.g.*, 7 U.S.C. § 2016(h)(11)(A)(iv) ("The term 'point-of-sale service' means any product or service related to the electronic authorization and processing of payments for merchandise at a retail food store. . . ."); 15 U.S.C. § 2822(c) ("Each automotive fuel retailer shall display in a clear and conspicuous manner, at the point of sale to ultimate purchasers of automotive fuel, the automotive fuel rating. . . ."); 23 U.S.C. § 410(c)(6)(B) (strategy for preventing under-age operators of motor vehicles from obtaining alcoholic beverages may include a "program provided by a nonprofit organization for training point of sale personnel").

this argument is distinguishable case law involving intellectual property. In *Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323 (2001), the court was construing terms within a specific patent. In determining the meaning of words within a patent, a different set of analytical principles guide judicial interpretation—accordingly, borrowing any conclusions or analysis from that case would inappropriate. *Id*. at 1331 ("It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." (citations omitted)). Plaintiff's citation to *General Motors Corp. v. Keystone Automotive Indust.*, 453 F.3d 351 (6th Cir. 2006) is another overreach. In that trademark infringement case, the court implicitly recognized the difference between physical point of sale location and sales occurring over the Internet, but merely noted that its analysis would also apply with full-force to either. *Id*. at 355 ("The points of sale for most of Tong Yang's grilles are collision repair shops, but some are sold directly to individuals over the internet."). In short, Plaintiff's two authorities are inapposite and unpersuasive.

      **C.**    **Plaintiff's Claim Fails For The Additional Reason That The E-mail Confirmation Did Not Evidence a Transaction And Was Not Sent By LivInn.**

In its Initial Memorandum, Defendant demonstrated that dismissal is appropriate for the additional reasons that there was no "transaction" as required by FACTA's receipt truncation provisions and, in any event, Defendant did not transmit the e-mail confirmation at issue. Defendant went on to demonstrate that Plaintiff is collaterally

estopped from disputing these facts. In response, Plaintiff misconstrues Defendant's arguments by citing to dictionary definitions and ignoring the impact of the analysis of and conclusions reached by the court in the Illinois Action.

Plaintiff does not argue that there are different issues, different parties or that he did not have a full opportunity to litigate in the Illinois Action. Instead, Plaintiff argues that the principle of collateral estoppel does not apply because the dismissal for lack of personal jurisdiction in the Illinois Action does not constitute a final adjudication on the merits. Opp. Memo. at 14-15. To support its argument, Plaintiff relies on Rule 41 of the Federal Rules of Civil Procedure and claims that, because Rule 41(b) states that a dismissal for lack of personal jurisdiction does not operate as an adjudication upon the merits, there can be no preclusive effect on his claim.

In making his argument, Plaintiff has confused *res judicata* (also known as "claim preclusion") with collateral estoppel (also known as "issue preclusion"). Although the dismissal for lack of personal jurisdiction does not have *res judicata* effect, it does have collateral estoppel effect, preventing the re-litigation of issues decided there:

> Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question . . . . The provision in Rule 41(b) that dismissal for lack of jurisdiction does not operate as an adjudication on the merits is not intended to change this result.

18 Charles Alan Wright et al., Federal Practice and Procedure § 4436 (1981); *see Matosantos Commercial Corp. v. Applebee's Int'l Inc.,* 245 F.3d 1203 (10th Cir. 2001) (citations omitted); *Robinette v. Jones,* 476 F.3d 585 (8th Cir. 2007) ("[a]lthough the

dismissal was without prejudice, 'an issue actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties." (citations omitted); *Unity House, Inc. v. First Commercial Fin. Group, Inc.*, No. 98-1060, 1999 WL 164924, at *1-2 (7th Cir. Mar. 17, 1999) (no re-litigation of issue dispositive on the merits of a plaintiff's case because the issue had been decided against the plaintiff in a prior suit dismissed for lack of personal jurisdiction).  In other words, the orders in the Illinois Action may not prevent Plaintiff from pursuing a claim—but, because the issues and parties are identical and Plaintiff had a full opportunity to litigate the factual issues in question in the Illinois Action, Plaintiff cannot seek to re-litigate those facts here.

In particular, as indicated in Defendant's Initial Memorandum, Plaintiff cannot re-litigate the issues of whether a transaction was completed by the e-mail confirmation (the Illinois court concluded that it was not)[4] and whether LivInn transmitted the e-mail confirmation (the Illinois court concluded that it did not).[5]

---

[4] The court in the Illinois Action already found that the reservation evidenced by Plaintiff's e-mail confirmation—which is the sole basis of Plaintiff's lawsuit—was not by itself a transaction. *See Holt, et al. vs. LivInn Suites, Ltd. et al.*, No. 09-cv-4327, Order Granting Mot. to Dismiss for Lack of Personal Jurisdiction, Doc. No. 64 at 1 (N.D. Ill. Dec. 16, 2009); Docket No. 64 at 4 ("After Holt stayed at the hotel in Fridley, Minnesota, the hotel charged his credit card after Holt's authorization, thus completing his transaction.")

[5] The court in the Illinois Action repeatedly concluded that *TravelClick*—not LivInn—provided the e-mail reservation confirmation at issue herein. *See Holt, et al. vs. LivInn Suites, Ltd. et al.*, No. 09-cv-4327, Order Granting Mot. to Dismiss for Lack of Personal Jurisdiction, Doc. No. 64 at 1 (N.D. Ill. Dec. 16, 2009) ("TravelClick provides a computer-generated receipt of the reservation"); *Id.* ("TravelClick then furnished a computer-generated receipt to [sic] Holt's reservation . . ."); and *Id.* at 4 ("TravelClick then furnished Holt a computer-generated receipt of his reservation. . ."). Plaintiff's Complaint does not include any allegations that contradict this conclusion.

For the purposes of Plaintiff's claim, these findings are dispositive because FACTA's receipt truncation provisions only apply to transactions and only provide for liability against the person who provides a printed receipt. Although it is uncommon, it is not legally significant that the Illinois court's factual determinations on a jurisdictional dispute also go to the merits of Plaintiff's claim. *See Matosantos,* 245 F.3d at 1211; *Roth v. McAllister Bros., Inc.*, 316 F.2d 143, 143-45 (2d Cir. 1963) ("For a tribunal always possesses jurisdiction to determine its jurisdiction, and any fact upon which that decision is grounded may serve as the basis for an estoppel by judgment in any later action"); *Unity House,* 1999 WL at *1-2. After an issue of fact has been fully litigated and determined by a court, a party may not seek to re-litigate that same issue to reach a different result.[6]

Moreover, Plaintiff does not provide any argument to show why the factual conclusions reached by the Illinois court were incorrect. Nor does Plaintiff address the ultimate issue by explaining how his claim survives if the court in the Illinois Action was correct as to these facts.

## II.   THE PLAIN LANGUAGE OF FACTA CANNOT BE TRUMPED BY PLAINTIFF'S UNSUPPORTED ARGUMENT REGARDING GENERAL CONGRESSIONAL INTENT.

In the first few pages of his opposition, Plaintiff argues that his preferred reading of FACTA's receipt truncation requirement must be adopted to effectuate FACTA's

---

[6] To determine the preclusive effect of a prior decision by a federal court, federal courts look to the law of the first jurisdiction to determine the issue or fact. In this instance, the elements of collateral estoppel in the Seventh Circuit and Eighth Circuit are virtually identical and compel the same result. *See, e.g., Crumley v. City of St. Paul*, 324 F.3d 1003, 1006 (8th Cir. 2003) and *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000).

general purpose of preventing identity theft. Plaintiff argues that because Congress intended FACTA to help combat identity theft and one source of identity theft is electronic communications, the Section 1861c(g) must apply to e-mail confirmations, such as the one at issue in this lawsuit. *See generally* Opp. Memo. at 5-7. Plaintiff's argument does not withstand scrutiny.

First, courts have repeatedly recognized that it is improper to ignore a statute's plain language in an effort to advance some perceived, general congressional intent not reflected in the actual statutory language. "The 'plain purpose' of legislation . . . is determined in the first instance with reference to the plain language of the statute itself. Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action." *Board of Governors v. Dimension Fin'l Corp.*, 474 U.S. 361, 372-75 (1986) (citations omitted); *see also Hatch v. Fleet Mortgage Corp.*, 181 F. Supp. 2d 995 (D. Minn. 2001) ("Congress may be unanimous in its intent to stamp out some vague social or economic evil; however, because its Members may differ sharply on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises" (citations omitted)).

Second, even if it were proper to consider some general notion of Congressional intent (which it is not), Plaintiff does not proffer any actual support to demonstrate the "clear intent" of Congress that FACTA's receipt truncation provisions were to reach e-mail confirmations and other e-commerce. *See generally* Opp. Memo. at 5-7. Congress enacted FACTA to help combat identity theft. That much is true. But Congress' general

purpose to combat identity theft does not illuminate the precise issue raised by Plaintiff's claim in this lawsuit and Defendant's motion to dismiss—that is, does Section 1681c(g) apply to e-mail confirmations?  Plaintiff has presented no evidence that Congress intended FACTA's receipt truncation requirement to cover e-mail confirmations, much less evidence that Congress clearly intended such coverage.  To the contrary, as demonstrated in Defendant's Initial Memorandum and Plaintiff's own Complaint, the legislative history demonstrates that Congress and the President were concerned with "dumpster-diving" and paper receipts when enacting the receipt truncation provisions of FACTA.  *See generally* Initial Memo., at 8-9; Compl. ¶ 5.

Moreover, Plaintiff's argument makes no sense because the provision at issue in this case is not the only way FACTA combats identity theft.  FACTA contains several provisions designed to combat identity theft, each aimed at a specific risk or harm.  *See, e.g.*, 15 U.S.C. § 1681c; 15 U.S.C. § 1681c-2; 15 U.S.C. § 1681j.  Representative Hooley summarized some of these provisions before the House:

> [FACTA will] [a]llow consumers to place 'fraud alerts' in their credit report to prevent identity thieves from opening accounts in their names . . . Require creditors to take certain precautions before extending credit to consumers who have placed 'fraud alerts' in their files; allow consumers to block information from being given to a credit bureau and from being reported by a credit bureau if such information results from identity theft; provide consumers with one-call-for-all protection by requiring credit bureaus to share consumer calls on identity theft, including requested fraud alert blocking; prohibiting merchants from printing more than the last 5 digits of a payment care [*sic*] on an electronic receipt; require banks to develop policies and procedures to identify potential instances of identity theft; require financial institutions to reconcile potentially fraudulent consumer address information; and require lenders to disclose their contact information on consumer reports.

> 149 Cong. Rec. H12198-01, 2003 WL 22852345, at *H12216 (Nov. 21, 2003).

As the consistent legislative references demonstrate, FACTA's receipt truncation requirement targets a specific method of identity theft and other identity theft provisions address other, specific risks.

Furthermore, in 2003, when Congress was considering FACTA, several other federal statutes already addressed identity theft concerns.  For example, the Identity Theft Deterrence Act, Congress' primary line of defense, prohibits the transfer or sale of any false identification documents that use fictitious or stolen personal information (including account numbers).  *See generally* 18 U.S.C. § 1028.  In 2000, Congress extended the application of that Act, using simple, plain language to prohibit the transfer or use of a false identification document, "including the transfer of a document by electronic means." 18 U.S.C. § 1028 (c)(3)(a).  The Computer Fraud and Abuse Act makes the unauthorized access of a computer with intent to defraud an offense punishable by up to ten years' imprisonment.  18 U.S.C. §§ 1030(a)(4), (c)(3).  Finally, the civil enforcement provision of the Stored Communications Act allows a victim of e-mail theft to bring an action for damages where the theft was intentional.  18 U.S.C. §§ 2701, 2707.

In sum—notwithstanding Plaintiff's myopic argument—FACTA's receipt truncation requirement was not passed in a vacuum.  Rather, it was intended to add an additional protection to a pre-existing framework that already addressed other means of identity theft, including e-mail theft.  It was not intended as a comprehensive solution,

but merely to close a loophole for paper receipts provided to the consumer at the retailer's physical location.

### III. PLAINTIFF'S ARGUMENTS REGARDING STATE LAWS AND FACTA'S NARROW PRE-EMPTION PROVISIONS ARE BASELESS.

Plaintiff also makes a flawed argument premised on the FCRA pre-emption provisions.  *See generally* Opp. Memo. at 7-9;  15 U.S.C. § 1681t(b).  FCRA precludes states from imposing any requirements or prohibitions "with respect to the conduct required by the specific provisions of" the FCRA, including the FACTA receipt truncation requirement of Section 1681c(g).  15 U.S.C. § 1681t(b)(5)(A).  Plaintiff argues that unless FACTA's receipt truncation provisions apply to e-mail, Internet retailers will be subject to the laws of various states—a result purportedly at odds with Congress' generally desire to provide uniform national standards.  *See* Opp. Memo. at 7-9.  Plaintiff's argument fails.

First, like Plaintiff's argument regarding identity theft, this is another attempt to argue that this Court should disregard the plain language of FACTA in order to serve an alleged general Congressional purpose.  But, to reiterate, whatever general goals Congress may have had, the plain language of FACTA controls.  Moreover, the preemption provisions indicate that Congress intended only narrow preemption—displacing state laws only "with respect to the conduct required by the specific provisions of" Section 1681c(g).  15 U.S.C. § 1681t(b)(5)(A).  In addition, the preemption savings clause, Section 1681t(a), states that state laws "with respect to . . . prevention or mitigation of identity theft" remain in full force and effect "except to the extent that those

laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C. § 1681t(a).  Thus, the plain language of the statute belies any argument that Congress intended to preempt the entire field with respect to misappropriation of credit card account information.

Plaintiff also argues that Congress would not seek to implement a national standard and leave Internet retailers subject to a host of conflicting state statutes.  Once again, Plaintiff overreaches in his argument.  Plaintiff simply imagines that retailers will be subject to a maze of conflicting, inconsistent state statutes covering e-commerce confirmations.  That is not true.  In reality, there is no reason to believe that the state statutes sweep more broadly than FACTA.  The pre-FACTA statutes that Plaintiff cites simply cover "receipt[s]."  Opp. Memo. at 7.  None expressly apply to e-mail.  In fact, the vast majority of the pre-FACTA statutes expressly prohibit only "print[ing]" more than the last five digits of the credit card number.[7]  Plaintiff also makes an argument based on the fact that several states enacted or amended their credit card receipt redaction statutes after Congress enacted FACTA in 2003.  Opp. Memo. at 7-9.  However, those post-FACTA statutes do not by their terms apply to e-mail.  In fact, even the Illinois statute

---

[7] *See generally* Cal. Civ. Code § 1747.09 (West 2010); Wash. Rev. Code § 19.200.010 (2009); Ariz. Rev. Stat. Ann. § 44-1367 (2010); Colo. Rev. Stat. § 6-1-711 (2009); Fla. Stat. § 501.0118 (2009); Nev. Rev. Stat. § 597.945 (2009); Md. Code Ann., Com. § 14-1318 (West 2010); Kan. Stat. Ann. § 50-669b (2009); Neb. Rev. Stat. § 28-633 (2009); N.J. Stat. Ann. § 56:11-42 (West 2010); N.Y. Gen. Bus. Law § 520-a(4-a) (McKinney 2009); Okla. Stat. Tit. 15, § 752A (2010); N.C. Gen. Stat. § 14-113.24 (2009); Tex. Bus. & Com. Code Ann. § 502.002 (Vernon 2009); Del. Code Ann. Tit. 11, § 915A (2009); Ga. Code Ann. § 10-15-3 (2009); Idaho Code Ann. § 28-51-103 (2009).

that Plaintiff highlights is silent as to e-mail, and applies only to "receipt[s]." 815 ILCS 505/2NN (2009).

Finally, if Plaintiff's argument regarding Congress' general intention to have FACTA's truncation requirement be the sole and exclusive statutory provision to combat identity theft is taken to its logical conclusion, there are obvious absurdities. Indeed, if Plaintiff's argument is correct, all other federal and state statutes relating to the prevention of identity theft would be wiped out and FACTA's truncation requirement would be the only substitute. However, it is clear that whether or not e-mail confirmations include credit card information, there are numerous other ways that computer hackers and/or computer viruses (such as keystroke logging software) would remain serious identity theft threats for online commerce. Alternatively, and consistent with Defendant's position, if Congress merely intended to close a small gap in the identity theft protections already a part of federal and state law (that is, the danger posed by printed credit card receipts provided at the point sale), Congress would have enacted a more limited statute focused on those paper receipts.

There is nothing in Congress' general intent to preempt a narrow category of state laws that would justify rejecting the construction of FACTA's receipt truncation requirement that is compelled by the statute's plain terms, by the statutory context, and by the legislative history.

## IV. PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE, UNDER THESE CIRCUMSTANCES, DEFENDANT'S ALLEGED VIOLATION OF FACTA WAS NOT WILLFUL.

As demonstrated in Defendant's Initial Memorandum, Plaintiff's complaint must be dismissed because any alleged FACTA violation committed by Defendant's third-party vendor was based on an objectively reasonable understanding of FACTA's receipt truncation requirements and was not, as a matter of law, a willful violation. Given the plain language of FACTA and the lack of appellate court guidance on this issue, it was objectively reasonable for Defendant to believe that the alleged conduct of its third-party vendor did not violate FACTA. In response to Defendant's argument regarding the lack of willfulness, Plaintiff makes a series of overlapping and confused arguments.

First, Plaintiff claims that, unlike the *Safeco v. Burr* case, there was guidance on the issue involved here. Opp. Memo. at 19. To support this argument, Plaintiff points to FTC statements that pre-date the original 2003 enactment of FACTA and appear to relate to different or general subject matters.

Second, Plaintiff argues that it may be premature to assess the objective reasonableness of a Defendant's view as a matter of law. While that may be true in some cases, this is not one of them. Rather, this is an instance where the willfulness of Defendant's conduct may be properly determined on a motion to dismiss. Numerous courts have dismissed actions for willful FCRA violations on the strength of defendants' *Safeco*-based arguments that their reading of the statute was reasonable. *See*, *e.g.*, *King v. Movietickets.com, Inc.*, 555 F. Supp. 2d 1339, 1342-43 (S.D. Fla. 2008); *Wojtczak v. Chase Bank USA, N.A.*, No. 06-C-987, 2007 WL 4232995, at *4 (E.D.Wis. Nov. 27,

2007); *Forrest v. JP Morgan Chase Bank, N.A.*, No. 06-C-298, 2007 WL 2773518, at *4-5 (E.D. Wis. Sept. 21, 2007).

Third, Plaintiff does not even respond to Defendant's argument that Plaintiff cannot demonstrate willfulness on the part of Defendant because its third-party vendor transmitted the e-mail confirmation in question. Even if the Court were to conclude that FACTA applies to e-mail communications (which it does not), Plaintiff has not articulated how or why its third-party vendor's conduct (even if it could have been willful on the part of the third-party vendor and it could not have been) can be attributed to Defendant for the purposes of "willfulness" under FACTA. This is a critical shortcoming: Defendant's reliance on a third-party vendor to do its job in compliance with a reasonable interpretation of the relevant statutory requirements can hardly be characterized as taking an "unjustifiably high risk." Thus, as a result, even if the third-party vendor's conduct were found to violate FACTA's receipt truncation requirement, Defendant's conduct here, as a matter of law, was not willful under FACTA.

## V.   AT A MINIMUM, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

As argued in Defendant's Initial Memorandum, Plaintiff's Complaint purports to assert a FACTA violation based on sparse and conclusory allegations that are insufficient to satisfy the requirements of Rule 8(a). Plaintiff does not respond to this argument directly or defend his sparse allegations. Instead, Plaintiff occasionally makes the conclusory statement in his opposition that Plaintiff has "sufficiently alleged" a violation of FACTA.

In actuality, as previously noted, the Complaint contains just one paragraph of "facts," alleging only that the Plaintiff received a computer-generated "receipt" that reflected the expiration date of Plaintiff's credit card. *See* Compl. ¶ 18. Plaintiff, in sum, makes no attempt to substantiate his purported claim with the "factual allegation[s] sufficient to plausibly suggest" liability that *Twombly* and *Iqbal* plainly require. Accordingly, Plaintiff's Complaint should be dismissed.

## CONCLUSION

For the reasons stated herein, Defendant LivInn Suites respectfully requests that this Court enter an order dismissing Plaintiff's Complaint with prejudice.

Date:  May 4, 2010

 /s/ Arthur G. Boylan
Robert L. DeMay (#22081)
Arthur G. Boylan (#338229)
LEONARD, STREET AND DEINARD
  Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN  55402
Telephone:  (612) 335-1500
Facsimile:  (612) 335-1657

**ATTORNEYS FOR DEFENDANT
  LivINN SUITES, INC.**